Filed 3/22/24  P. v. Spengler CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B323589 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA158456) |
| v. | |
| MATTHEW EDWARD SPENGLER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Matthew Spengler of vandalism and of disobeying a court order. At his trial, the People introduced prior incidents involving, among others, Spengler's altercations with law enforcement. After finding that Spengler had aggravating circumstances, the trial court sentenced Spengler to the upper term for vandalism. On appeal, Spengler contends that the trial court abused its discretion by imposing the upper term and instead should have imposed the middle or lower term based on his mental illness. He alternatively argues that if he forfeited the claim by failing to raise it below, his trial counsel provided ineffective assistance. We reject these contentions and affirm the judgment.

## BACKGROUND

I.     The charged offenses

The charged offenses arose out of incidents occurring in March and May 2022.

The first incident began on March 31, 2022. Public Safety Officer Victor Lomas was on patrol in Bellflower when he noticed something in an alley. When the officer slowed his car, Spengler yelled at him to get the "fuck out" of there and threw shoes at the officer's marked police car. Spengler "charged" the officer's car and kicked the driver's side door. Officer Lomas backed up, but Spengler charged at the car again and kicked the door and tailgate, denting and scratching the car. Deputy Michael Arnold arrived and arrested Spengler, who resisted, saying, "I'm gonna fuck you guys up." Spengler kicked at deputies and yelled profanities, saying this was "personal, you dick" and threatening to "fuck you guys up." During this, Deputy Arnold saw another deputy hit Spengler.

2

As a result of this incident, Officer Lomas obtained a restraining order against Spengler. A few days after the officer obtained the restraining order, he saw Spengler again at a shopping center. Spengler approached Officer Lomas's car. When the officer started to drive away, Spengler spat at the car.

The second incident occurred on May 30, 2022. Davon Sanders was working at a store in a strip mall in Bellflower. That afternoon, Sanders saw Spengler throw pavers from a nearby pathway at the windows of a granite top business. Video surveillance from a nearby business captured the incident. Deputy Saul Ruiz responded to the scene and recognized Spengler. Spengler told Deputy Ruiz that "people [were] hurting my balls," that the deputy should be ashamed of himself, and to take off that "fucking costume." Spengler also said, "Criminal law enforcement? Fuck you!" Knowing that Spengler tended to be aggressive with law enforcement, Deputy Ruiz decided to arrest Spengler another day, when he was not agitated. The next day, Deputy Ruiz was having lunch near the Bellflower courthouse when he heard glass breaking. He saw Spengler, who, when told to stop, ran but tripped. When Deputy Ruiz tried to grab Spengler's hand to handcuff him, Spengler scratched the deputy, causing bleeding and scarring.

II.     The prior offenses

At Spengler's trial for vandalism and disobeying a court order, the People introduced evidence of the following prior incidents.

A.    *January 17, 2021*

On January 17, 2021, Deputy Sterling Buck was at the Lakewood Sheriff's station. The station's lobby has a memorial wall commemorating officers who died in the line of duty. Spengler had just been released from custody and was in the station's lobby. He smashed vases, ripped a phone from the wall, and threw a pot in the corner near the memorial wall.

B.    *April 11, 2021*

On April 11, 2021, Deputy Renata Phillip was at the Lakewood station when she saw Spengler pick up vases and throw them down in front of the memorial wall. When deputies arrested Spengler, he called them "assholes" and said, "Fuck you." When Deputy Arnold arrived at the station, Spengler, who was in a patrol car, spat on him. Deputy Phillip sprayed Spengler with pepper spray. Spengler said he was sorry that happened,[1] but he did not respect the Sheriff's Department as a unit.

C.    *March 23, 2022*

On March 23, 2022, Public Safety Officer Daniel Moreno was driving his marked officer's car in Bellflower when he heard something thump his car several times. The officer saw Spengler, whom the officer knew to be a local transient, throwing what the officer assumed were rocks. During prior encounters with law enforcement, Spengler had "flip[ped] us off" or "cuss[ed] us out." When additional law enforcement arrived at the scene, Spengler stood and approached one of the police cars with a "very

---

[1]    It is unclear what Spengler was sorry about.

4

aggressive demeanor." When a deputy tried to get Spengler's hands behind his back, Spengler resisted.

III.  Verdict and sentence

A jury found Spengler guilty of vandalism of the granite top business of $400 or more (Pen. Code,[2] § 594, subd. (a); count 1) and of disobeying a court order (§ 166, subd. (a)(4); count 3).[3]

On September 21, 2022, the trial court held a court trial on the aggravating factors that had been alleged against Spengler. Relying on the probation report, the trial court found that Spengler's prior convictions were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), he was on probation when the crimes were committed (*id.*, rule 4.421(b)(4)), and his performance on probation was unsatisfactory (*id.*, rule 4.421(b)(5)).

Turning to sentencing, the trial court asked Spengler's counsel if she wanted to be heard, but counsel submitted. The trial court then said that, given the aggravating factors, it was sentencing Spengler to the upper term of three years in prison on count 1 but stayed a six-month sentence on count 3.[4]

---

[2]  All further undesignated statutory references are to the Penal Code.

[3]  The jury found Spengler not guilty of battery on a peace officer, Deputy Ruiz (§ 243, subd. (b); count 2). Also, although the verdict form stated that count 3 was a felony, the trial court later clarified it was a misdemeanor.

[4]  The trial court imposed a concurrent two years in prison on a probation violation case also before it.

# DISCUSSION

I.    The trial court did not abuse its discretion by imposing the upper term

Spengler contends that the trial court abused its discretion by imposing the upper term. He argues that the trial court should have instead imposed the middle term under section 1170, subdivision (b)(2), or the lower term under subdivision (b)(6). As we explain, the trial court did not abuse its sentencing discretion.

Trial courts generally have broad sentencing discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 844.) However, recent amendments to sentencing laws have provided guidance on how that discretion may be exercised. As relevant here, section 1170, subdivision (b)(1), now provides that where a statute specifies three possible terms, the trial court "shall, in its sound discretion," impose the middle term, except as otherwise provided in the section. The trial court may impose a sentence exceeding the middle term only when aggravating circumstances justify imposing a term exceeding the middle term and either the defendant has stipulated to or the trier of fact has found true beyond a reasonable doubt "the facts underlying those circumstances." (§ 1170, subd. (b)(2).) Notwithstanding subdivision (b)(1), unless the trial court finds that aggravating circumstances outweigh mitigating circumstances, the trial court shall impose the low term if, as relevant here, the "person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence" and the trauma was "a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A).)

On appeal, the party attacking a sentencing decision has the burden of showing it was irrational and arbitrary, and we will

6

not reverse a sentencing decision merely because reasonable people might disagree.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)  A trial court abuses its discretion if it relies on circumstances irrelevant to the sentencing decision or that otherwise constitute an improper basis for it.  (*People v. Sandoval, supra,* 41 Cal.4th at p. 847.)

Here, Spengler concedes that his trial counsel did not raise section 1170 below, thereby forfeiting any issue on appeal regarding the trial court's imposition of the upper term.  (See generally *People v. Scott* (1994) 9 Cal.4th 331, 351 [defendant cannot argue for first time on appeal that court improperly aggravated a sentence]; *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 (*Tilley*) [where defendant did not seek lower term, object to middle term, or argue he suffered psychological trauma resulting from mental illness, any claim was forfeited].)  Nonetheless, we address the merits of Spengler's contentions.

Spengler contends his mental illness required the trial court to sentence him to either the low term under section 1170, subdivision (b)(6), or, to the middle term because his mental illness was a mitigating factor.  To show he was mentally ill, Spengler relies on the probation report, which states, "According to the consolidated criminal history reporting system, [Spengler] is classified as 'mentally disturbed.' "  He also argues that the nature of his crimes and his unhoused status show he was mentally ill.

Even assuming the record supports a finding that Spengler was mentally ill, section 1170 subdivision (b)(6), "does not require the court to impose the lower term because of defendant's mental illness, but for psychological trauma."  (*Tilley, supra,* 92 Cal.App.5th at p. 777.)  While psychological trauma based on

7

mental illness may be a qualifying circumstance for the lower term presumption, mental illness alone is not a basis for application of the presumption.  (*Ibid.*; *People v. Banner* (2022) 77 Cal.App.5th 226, 241.)  Rather, "[p]sychological trauma must attend the illness, and *that* trauma must contribute to the crime." (*Banner*, at p. 241.)  Therefore, even assuming Spengler was mentally ill, nothing in the record shows that any psychological trauma contributed to his crimes.  To the contrary, the record supports a finding that animus toward the Sheriff's Department or law enforcement motivated his crimes.

As to the upper term, the trial court imposed it after finding three aggravating factors:  (1) Spengler's prior convictions were numerous or of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), (2) he was on probation when he committed the crimes (*id.*, rule 4.421(b)(4)), and (3) his performance on probation was unsatisfactory (*id.*, rule 4.421(b)(5)).  Spengler does not argue that the trial court erred in making those findings and, indeed, he acknowledges the aggravating factors "might in and of themselves justify" imposing the upper term.

Nonetheless, he asserts those aggravating factors do not justify the upper term because "no inquiry was made" about a mitigating circumstance, that is, whether he suffered from a "mental or physical condition" that "significantly reduced culpability" for the crimes.  (Cal. Rules of Court, rule 4.423(b)(2).) However, unless the record affirmatively shows otherwise, a trial court is deemed to have considered all relevant factors.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 309–310.)  The record here affirmatively shows the trial court *did* consider the probation report, because the trial court referred to it, noting that Spengler had "quite a few" priors.  Further, referencing the probation

report, the prosecutor reminded the trial court that "we" counted 10 misdemeanors. As the trial court examined the probation report and acknowledged its contents, we can reasonably infer the trial court considered Spengler's "mental illness" in exercising its sentencing discretion.

Spengler also suggests the trial court was ignorant of circumstances underlying his prior convictions that might suggest he was mentally ill. Delving into the details of those convictions, Spengler asserts they "do not betoken a career criminal, but someone who[se] mental functions are not normal," as "no one in his right mind would stand in front of a business in the middle of the day" and throw pavers at windows in the full view of others. However, there is no basis for the suggestion the trial court did not know the contexts surrounding Spengler's charged crimes or prior convictions. The sentencing judge presided over the trial at which evidence of multiple prior incidents was introduced. Therefore, the trial court was well aware, for example, that Spengler was unhoused, had multiple angry encounters with law enforcement, and was verbally abusive to law enforcement. To the extent any of this suggested Spengler was mentally ill, the trial court would have been able to make that connection.

In any event, even if the trial court agreed that Spengler had a mental illness, there was no evidence connecting it to a reduced culpability for the crimes. (Cal. Rules of Court, rule 4.423(b)(2).) Moreover, even if the trial court had found that Spengler's mental illness was a mitigating factor, the trial court was entitled to minimize any mitigating factor without explanation and to find that the aggravating factors outweighed the mitigating one. (*People v. Salazar* (1983) 144 Cal.App.3d 799,

813.)  We therefore cannot find that the trial court abused its sentencing discretion.

II.     Ineffective assistance of counsel

Alternatively, Spengler argues that his trial counsel provided ineffective assistance by failing to introduce evidence of his mental illness and to request the middle or low terms.

To establish ineffective assistance of counsel, the appellant must show that counsel's performance fell below an objective standard of reasonableness and prejudice.  (See generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–688; *Tilley*, *supra*, 92 Cal.App.5th at p. 778.)  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)  We defer to counsel's reasonable tactical decisions and do not judge those decisions in hindsight's harsh light.  (*Ibid.*)  Prejudice occurs where there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have achieved a more favorable outcome.  (*Strickland*, at p. 694; *Stanley*, at p. 954.)  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  (*Strickland*, at p. 694; *Stanley*, at p. 954.)

Here, trial counsel did not raise mental illness as a reason to impose the lower term under section 1170, subdivision (b)(6), or as a circumstance mitigating in favor of the middle term, and the record reveals no reason why counsel elected not to do so.  However, even assuming the record contains clear evidence of mental illness and that counsel recognized that Spengler was mentally ill, counsel may not have had evidence Spengler suffered resulting psychological trauma that contributed to his crimes (§ 1170, subd. (b)(6)(A); *People v. Banner*, *supra*, 77

Cal.App.5th at p. 241) or that his "mental condition" "significantly reduced culpability" for the crimes (Cal. Rules of Court, rule 4.423(b)(2)). If so, counsel had no obligation to raise Spengler's mental illness at sentencing. (See, e.g., *People v. Bell* (2019) 7 Cal.5th 70, 126 [attorney not ineffective for failing to pursue futile or frivolous motion].) We therefore cannot conclude on this record that Spengler's trial counsel provided ineffective assistance.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

11